IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MAUDE DEAN JOHNSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-10-422 |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| COMMISSIONER OF THE | § | |
| SOCIAL SECURITY ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |
| | § | |

**MEMORANDUM OPINION**

Pending before the court[1] are Plaintiff's Motion for Summary Judgment (Docket Entry No. 14) and Defendant's Cross Motion for Summary Judgment (Docket Entry No. 13).  The court has considered the motions, all relevant filings, and the applicable law.

For the reasons set forth below, the court **DENIES** Plaintiff's Motion for Summary Judgment (Docket Entry No. 14), **GRANTS** Defendant's Cross Motion for Summary Judgment (Docket Entry No. 13), and **AFFIRMS** the Commissioner's decision.

## I.  Case Background

Plaintiff Maude Dean Johnson ("Plaintiff" or "Claimant") filed this action pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3) for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration ("Defendant" or

---

[1]   The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  Docket Entry Nos. 9, 11, 12.

"Commissioner") regarding Plaintiff's claims for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. § 423, and for supplemental security income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1382c(a)(3).[2]

## A.   Procedural History

Plaintiff filed for disability benefits on August 17, 2007,[3] alleging disability since January 10, 2007,[4] as a result of heart problems, high blood pressure, ulcers, liver problems and anemia.[5] Plaintiff's application was denied at the initial level on December 11, 2007,[6] and upon reconsideration on June 4, 2008.[7] She requested a hearing before an Administrative Law Judge of the Social Security Administration ("ALJ").[8]  The ALJ granted Plaintiff's request and gave notice that the hearing would be held on September 29, 2008.[9] Plaintiff was unable to attend this hearing, as she was evacuated

---

[2]     Docket Entry No. 14, Pl.'s Mot. for Summ. J., p. 1.

[3]     Transcript of the Administrative Proceedings ("Tr.") 176.

[4]     Tr. 176.

[5]     Tr. 155.  Plaintiff listed the following symptoms and side effects in her application for disability benefits: weakness, fatigue, disorientation and sleepiness.  Tr. 155.

[6]     Tr. 52-58.

[7]     Tr. 61-65.

[8]     Tr. 66-68.

[9]     Tr. 75.

to Dallas due to Hurricane Ike.[10]   Plaintiff's hearing was
rescheduled and conducted in Houston, Texas, on November 5, 2008.[11]
After listening to testimony presented at the hearing and reviewing
the medical record, the ALJ issued an unfavorable decision on
January 21, 2009.[12]

On October 19, 2009, the Appeals Council denied Plaintiff's
request for review, thereby making the ALJ's decision the
Defendant's final decision.[13]  Having exhausted her administrative
remedies, Plaintiff filed this timely civil action pursuant to 42
U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3) for judicial review of
the Defendant's unfavorable decision.

**B.   Factual History**

**1.   Plaintiff's Age, Education, and Work Experience**

Plaintiff was born on August 20, 1960, and was forty-eight
years old at the time of the hearing before the ALJ.[14]  Plaintiff
had a high school education and completed two years of trade school
to be a nurse assistant.[15]  In the past fifteen years, Plaintiff has

---

[10]   Tr. 20, 662.

[11]   Tr. 101.

[12]   Tr. 6-17.

[13]   Tr. 1-3.

[14]   Tr. 25.

[15]   Tr. 25.

worked as a home health provider, a fast food cook, and a cashier.[16]

### 2.   Plaintiff's Testimony

At the hearing on November 5, 2008, Plaintiff testified that she was separated from her husband and living with a male friend.[17] Plaintiff had a fourteen-year-old daughter who lived with her father but visited Plaintiff and helped her with housework.[18] Plaintiff testified that she occasionally cooked and cleaned when she was physically able to do so.[19]  She said that she had not driven in a year due to side effects from her medication, which caused dizziness and problems with her vision.[20]  Plaintiff's last job was at McDonald's.[21]  Prior to that she worked as a home health aide.[22]

Plaintiff complained of the following physical problems: ulcers; swelling in her extremities, face, and neck; high blood pressure; and chronic heart failure.[23]  Plaintiff testified that she was hospitalized in February 2007 for a "tear in [her] heart."[24]

---

[16]   Tr. 179.

[17]   Tr. 35.

[18]   Tr. 35, 37.

[19]   Tr. 35.

[20]   Tr. 37.

[21]   Tr. 25.

[22]   Tr. 25.

[23]   Tr. 26-30.

[24]   Tr. 26.

4

The doctors at Memorial Hermann Hospital ("MMH") performed heart surgery on Plaintiff.[25]  Plaintiff complained that since the surgery her blood pressure was often elevated and she experienced swelling in her body.[26]  Plaintiff noted that she experienced severe swelling every two-to-three days, and as a consequence, had to lie down with her legs elevated for a couple of hours.[27]  She mentioned that she was taking medication to keep the swelling down, but that it was not always effective.[28]  She could only stand for about two hours at a time.[29]  She could walk less than a block before she was out of breath, and she had trouble breathing after climbing four or five steps.[30]  She also indicated that she could only pick up items weighing two-to-three pounds due to the strain it caused her.[31]  Plaintiff testified that sitting was not a problem.[32]

Plaintiff offered testimony about her past cocaine use.[33]  She stated at the hearing that the last date she used cocaine was

---

[25]     Tr. 26.

[26]     Tr. 27.

[27]     Tr. 32.

[28]     Tr. 28.

[29]     Tr. 33.

[30]     Tr. 33, 35.

[31]     Tr. 34.

[32]     Tr. 32-33.

[33]     Tr. 30-31, 37-41.

August 18, 2007.[34]  She referred to this as her "sobriety date."[35] Prior to that, Plaintiff characterized her cocaine use as "occasional."[36]  The ALJ noted that there are two places in the record that contradict the sobriety date indicated by Plaintiff.[37] First, a hospital record from July 2008 states that Plaintiff last used cocaine one month before, in June 2008.[38]  Second, a hospital record from September 2008 notes that Plaintiff last used cocaine six months before.[39]  Plaintiff responded that she probably confused her dates when the doctors asked her; she did not understand why the records indicated any drug use after August 2007.[40]

The ALJ questioned Plaintiff about non-compliance with her medication regimen.[41]  Plaintiff explained that she was unable to pay for her medication when her Medicaid coverage expired.[42] However, she said that each time she ran out of medication, she went to the hospital to get her prescriptions refilled.[43]

---

[34]     Tr. 30.

[35]     Tr. 30.

[36]     Tr. 30.

[37]     Tr. 38, 40.

[38]     Tr. 479.

[39]     Tr. 608.

[40]     Tr. 39-41.

[41]     Tr. 38.

[42]     Tr. 38.

[43]     Tr. 38-39.

### 3.    Plaintiff's Medical Record[44]

Plaintiff's   medical   record   shows   that   Plaintiff   was
hospitalized six times from the date she claims her disability
began, in January 2007, until the date of her hearing, on November
5, 2008.[45]

The   first   hospital   visit   occurred   in   February   2007.[46]
Plaintiff said she began feeling intense back pains and went to
MMH.[47]   The doctors found that Plaintiff had an aortic aneurysm and
performed surgery to correct the problem.[48]   The post-operative
diagnosis   included:   ascending   aortic   aneurysm,   mild   aortic
insufficiency, cocaine use, tobacco dependence, hypertension, left
ventricular hypertrophy, pulmonary hypertension, and acute Type A
aortic dissection.[49]   Anthony Estrera, M.D., noted with regard to
Plaintiff's discharge activity:

> The patient may ambulate with assistance as tolerated.
> The patient may lift no greater than ten pounds.  This
> has been expressed to patient and she understands the
> dangers of heavy lifting during the early post-operative
> period.   The patient may climb stairs and may shower at

---

[44]    A medical expert did not testify at the hearing.  See Tr. 22-47.

[45]    Tr. 204-732.

[46]    Tr. 280-304.

[47]    Tr. 26.

[48]    Tr. 280-281.  The specific procedures performed included: urgent
resection and graft replacement, resuspension of aortic valve, aortic root
reconstruction, retrograde cerebral perfusion of the brain, and transesophageal
echocardiography.  Tr. 280.

[49]    Tr. 297.

liberty.[50]

Next, Plaintiff was admitted to Lyndon B. Johnson General Hospital ("LBJ") from June 30, 2007, to July 4, 2007, for a hypertensive emergency and cocaine use.[51]  Her discharge diagnosis included: hypertension, cocaine abuse, aortic dissection, hepatitis C, and depression.[52]  At this visit, Plaintiff tested positive for cocaine and reported using cocaine three days prior to admission.[53]  Her discharge instructions read: "Low salt.   Activity as tolerated."[54]  She was also given referrals to follow up with a medical clinic, a pulmonary clinic, and a substance abuse clinic.[55]  The medical staff noted that she had a history of high blood pressure dating back twenty-eight years; a history of crack cocaine use dating back twenty years; a long history of alcohol use and smoking; and a history of hepatitis C dating back five years.[56]

Plaintiff had a State agency exam on November 14, 2007.[57]  She

---

[50]     Tr. 282.

[51]     Tr. 208-252.

[52]     Tr. 208.

[53]     Tr. 209, 213.

[54]     Tr. 209.

[55]     Tr. 209.

[56]     Tr. 222.  Within a month of this second visit to the hospital, Plaintiff applied for DIB and SSI.  In support of her application, Plaintiff submitted a disability report, work history forms, and a daily activity questionnaire.  Tr. 176-189.

[57]     Tr. 307-309.

complained of chest pain, liver problems from hepatitis C, and hypertension.[58]   Associated symptoms included: sharp chest pain about twice a week, shortness of breath, rapid heart beat, dizziness, intermittent abdominal pains, nausea, vomiting, diarrhea, fatigue, general weakness, and occasional headaches that led to blurred vision.[59]   Farzana Sahi, M.D., ("Dr. Sahi") noted that Plaintiff appeared to be in distress at rest but that Plaintiff had a normal range of motion.[60]  Dr. Sahi also noted that Plaintiff's blood pressure was high and did not appear to be controlled by the medications that Plaintiff had been prescribed.[61] Dr. Sahi wrote that Plaintiff may have difficulty sitting and standing for moderate periods of time, walking short distances, and with light lifting.[62]

One month later, on December 12, 2007, Scott Spoor, M.D., ("Dr. Spoor") reviewed Plaintiff's application for DIB and SSI and completed a residual functional capacity ("RFC") assessment.[63] Plaintiff's primary diagnosis was listed as hepatitis C, with a secondary diagnosis of hypertension.[64]   Dr. Spoor wrote that

---

[58]     Tr. 307.

[59]     Tr. 307.

[60]     Tr. 308-309.

[61]     Tr. 309.

[62]     Tr. 309.

[63]     Tr. 317-324.

[64]     Tr. 329.

Plaintiff's limitations were not wholly supported by the evidence in the file.[65]

On February 13, 2008, Plaintiff was in a car accident and was taken to Ben Taub General Hospital ("BTGH").[66]  The discharge summary from BTGH states that Plaintiff lost consciousness while driving without a seatbelt and with no airbag.[67]  Her discharge diagnosis consisted of a right pulmonary contusion and musculoskeletal pain.[68]  It was noted on the date of discharge, February 20, 2008, that Plaintiff's vital signs were stable, she was ambulating with crutches, and her pain was controlled with prescribed medications.[69]

On March 10, 2008, Plaintiff submitted a request for reconsideration of her disability determination.[70]  In June 2008, Plaintiff's medical records were reviewed by another State agency physician, Kim Rowlands, M.D., ("Dr. Rowlands").[71]  Plaintiff's primary diagnosis was listed as coronary artery disease, with a

---

[65]     Tr. 322.  Her application for DIB and SSI was subsequently denied. It was found that although Plaintiff had some limitations, her daily activities were not significantly affected.  Tr. 52-58.

[66]     Tr. 329-330.

[67]     Tr. 329.

[68]     Tr. 329.

[69]     Tr. 330.

[70]     Tr. 59-60.

[71]     Tr. 343.

secondary diagnosis of hypertension.[72]   Dr. Rowlands noted:
"[Claimant] reports having had two surgeries since initial
evaluation.  She is not responding to requests for information.
Insufficient evidence denial.  Severity of limits alleged are not
supported by evidence in file."[73]

Plaintiff was thereafter admitted to the hospital three
times.[74]  First, Plaintiff was admitted to LBJ from July 14, 2008,
to July 17, 2008.[75]  The discharge diagnosis included: congestive
heart failure, hypertension, hepatitis C, aortic dissection post-
graft replacement in 2006, peptic ulcer disease, and major
depression.[76]  LBJ staff noted that she complained of shortness of
breath, which had gradually worsened over a three-day period.[77]
Plaintiff reported that for the past month she had been taking her
medication only once per week.[78]   Plaintiff also reported an
incident that had taken place two months prior: she was depressed
and took some sleeping pills and drank a bottle of wine.[79]

---

[72]   Tr. 50.

[73]   Tr. 343.   Plaintiff's application for reconsideration was
subsequently denied.  Tr. 61-65.

[74]   Tr. 473-732.

[75]   Tr. 476-483.

[76]   Tr. 476.

[77]   Tr. 477.

[78]   Tr. 477.

[79]   Tr. 477.

Subsequently, she was admitted to a rehabilitation center for thirty days.[80] However, she denied having any suicidal thoughts, or plans to hurt herself or others upon admission to LBJ.[81] She was discharged with instructions to continue taking her medications regularly.[82] She was also told to return if she felt any chest pain or shortness of breath.[83]

Plaintiff was admitted to LBJ again from September 3, 2008, to September 9, 2008.[84] Her discharge diagnosis included: hypertension, aortic aneurysm status post-graft repair, peptic ulcer disease, and drug abuse.[85] Plaintiff said that she had a headache and shortness of breath.[86] She stated in the emergency room that she had some swelling in her face, hands, and neck.[87] LBJ medical staff noted that the swelling was likely due to the

---

[80]     Tr. 477.

[81]     Tr. 477.

[82]     Tr. 477.

[83]     Tr. 477.

[84]     Tr. 608-614.

[85]     Tr. 608. There is no record that Plaintiff tested positive for cocaine use at this visit. It seems that drug abuse diagnosis was based on Plaintiff's long history of tobacco, alcohol, and drug use. She reported that she stopped using all of the above when she joined "rehab" six months prior. Tr. 609.

[86]     Tr. 608.

[87]     Tr. 608.

medication, Anapril, to which Plaintiff was allergic.[88]   She was discharged in good condition with instructions to check and record her blood pressure morning and night.[89]

Finally, from September 22, 2008, to September 26, 2008, Plaintiff was admitted to Methodist Dallas Medical Center ("MDMC") when she was staying in Dallas due to Hurricane Ike.[90]   Her diagnosis at this visit included: fluid overload, malignant hypertension, chest pain, and esophageal reflux.  MDMC staff noted that she experienced shortness of breath all the time, found it hard to lie flat, and woke up gasping for air.[91]   Plaintiff reported chest pains radiating to her back, lasting about five minutes, multiple times per day.[92]   She also noticed her legs and feet swelling at this time.[93]   Michael Passanante, M.D., ("Dr. Passanante") saw Plaintiff on September 22, 2008, and noted that Plaintiff appeared to be in acute distress.[94]   She had chest pain,

---

[88]     Tr. 608.  It is not clear if this medication was a part of her regular medication regimen or something she was given by hospital staff while she was being treated at the emergency room.

[89]     Tr. 610.

[90]     Tr. 633-34, 662.

[91]     Tr. 638.

[92]     Tr. 638.

[93]     Tr. 638.

[94]     Tr. 640.

edema,[95] and difficulty breathing.[96]   Dr. Passante provided the following diagnosis: acute exacerbation of congestive heart failure, chest pain, and accelerated hypertension.[97]   Ruth Ingram ("Ms. Ingram")[98] saw Plaintiff the next day and conducted a physical assessment.[99]   The notes from the assessment state that Plaintiff's respiratory effort was non-labored.[100]   Although Plaintiff's chief complaint was listed as chest pain, she did not have pain at the time of the assessment.[101]   It was noted that her tolerance for activity was good.[102]   Plaintiff was considered to be a low suicide risk, and she was not found to have depression or any other psychiatric problem.[103]

### 4.  Vocational Expert Testimony

After reviewing the file and listening to Plaintiff's testimony, the vocational expert ("VE"), Cheryl Swisher, offered

---

[95]    Edema is an abnormal excess accumulation of serious fluid in connective tissue or in a serious cavity.   MERRIAM WEBSTER'S MEDICAL DICTIONARY (Springfield, Merriam Webster, Inc. 1995).

[96]    Tr. 640-641.

[97]    Tr. 641.

[98]    It is unclear from the hospital records whether Ms. Ingram is a doctor, nurse, or other hospital staff member.

[99]    Tr. 696-709.

[100]    Tr. 697.

[101]    Tr. 70, 704.

[102]    Tr. 701.

[103]    Tr. 702, 708.

testimony concerning the skill and exertional level of Plaintiff's past occupations.[104]   She testified that the occupation of home health provider is listed in the Dictionary of Occupational Titles ("DOT") as semi-skilled, with a medium exertional level.[105]   She noted, however, that Plaintiff performed this occupation at a heavy exertional level.[106]   Next, the VE stated that the DOT lists the position of fast food cook as skilled, with a medium exertional level.[107]   She noted that this position should probably be categorized as semi-skilled.[108]   Finally, the VE said that the position of cashier is listed as skilled, with a light exertional level.[109]

The ALJ asked the VE to assess the vocational ability of a person with the following abilities or limitations: ability to stand or walk about two hours in an eight hour day, with normal breaks; ability to sit for six hours; limited ability to carry or lift ten pounds; limited ability to climb stairs, stoop, or crouch; no ability to climb ropes, ladders, scaffolding, kneel or crawl; and no ability to operate dangerous machinery.[110]   The ALJ asked

---

[104]   Tr. 42-46.

[105]   Tr. 42.

[106]   Tr. 42.

[107]   Tr. 42.

[108]   Tr. 42.

[109]   Tr. 42.

[110]   Tr. 42-43.

Plaintiff if her medications had any side effects.[111]  Plaintiff said that her medications caused drowsiness, dizziness, and disorientation.[112]  The VE then responded that such a hypothetical person experiencing those medication side effects could not perform Plaintiff's past occupations.[113]

The ALJ next asked the VE to assume a hypothetical person exactly like the person in the first example, adding that this person is aged forty-eight, with a high school degree, and nurse's aid training.[114]  The ALJ asked the VE if there was any other work in the regional or national economy for such a person.[115]  The VE provided three examples of jobs that such a person could perform. First, this person could be a receptionist.[116]  The VE reported there are approximately 8,000 to 10,000 such positions in Houston and the surrounding counties, and over 400,000 such positions in the national economy.[117]  Second, this person could be an appointment clerk.[118]  There are approximately 3,000 such positions in Houston and surrounding counties, and approximately 170,000 such positions

---

[111]   Tr. 43.

[112]   Tr. 43.

[113]   Tr. 43.

[114]   Tr. 43.

[115]   Tr. 43.

[116]   Tr. 43.

[117]   Tr. 43.

[118]   Tr. 43.

in the national economy.[119]   Third, this person could be an information clerk.[120]  There are approximately 900 to 1,000 positions in Houston and surrounding counties, and approximately 100,000 positions in the national economy.[121]  Each of these positions is semi-skilled, with a sedentary exertional level.[122]

The ALJ then allowed Plaintiff's attorney to question the VE.[123] The attorney asked the VE to assume the previous hypothetical, adding an accommodation for a person who has to elevate her feet for about two hours every two-to-three days.[124]  The VE responded that this would require an accommodation from the employer and that this "would not be consistent with competitive employment."[125]

## II.  Legal Standards

### A.  Standard of Review

This court's review of a final decision by the Commissioner denying disability benefits is limited to determining (1) whether substantial record evidence supports the decision and (2) whether the ALJ applied proper legal standards in evaluating the evidence.

---

[119]    Tr. 44.

[120]    Tr. 44.

[121]    Tr. 44.

[122]    Tr. 43-44.

[123]    Tr. 44-46.

[124]    Tr. 44.

[125]    Tr. 44.

Brown v. Apfel, 192 F.3d 492, 496 (5th Cir. 1999).

If the findings of fact contained in the Commissioner's decision are supported by substantial evidence, they are conclusive, and this court must affirm. Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990). Substantial evidence is described as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is "more than a mere scintilla, and less than a preponderance." Spellman v. Shalala, 1 F.3d 357, 360 (5th Cir. 1993). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988). Under this standard, the court must review the entire record but may not reweigh the record evidence, determine the issues de novo, or substitute its judgment for that of the Commissioner. Brown, 192 F.3d at 496.

**B.   Standard to Determine Disability**

To obtain disability benefits, a claimant bears the ultimate burden of proving she is disabled within the meaning of the Act. Wren v. Sullivan, 925 F.2d 123, 125 (5th Cir. 1991). Specifically, under the legal standard for determining disability, the claimant must prove she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental

18

impairment which . . . has lasted or can expect to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a); see also Greenspan, 38 F.3d at 236. The existence of such disability must be demonstrated by "medically acceptable clinical and laboratory diagnostic findings." 42 U.S.C. §§ 423(d)(3), (d)(5); see also Jones v. Heckler, 702 F.2d 616, 620 (5th Cir. 1983).

To determine whether a claimant is disabled under this standard, Social Security Act regulations ("regulations") provide that a disability claim should be evaluated according to a sequential five-step process:

> (1) An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.
>
> (2) An individual who does not have a "severe impairment" will not be found to be disabled.
>
> (3) An individual who meets or equals a Listing[126] will be considered disabled without the consideration of vocational factors.
>
> (4) If an individual is capable of performing the work she has done in the past, a finding of "not disabled" will be made.
>
> (5) If an individual's impairment precludes her from performing her past work, other factors including age, education, past work experience, and RFC must be considered to determine if other work can be performed.

Bowling v. Shalala, 36 F.3d 431, 435 (5th Cir. 1994); see also 20

---

[126] "The Listings" or "a Listing" refers to impairments listed in Appendix 1 of the Act's regulations. 20 C.F.R. pt. 404, subpt. P, app. 1.

C.F.R. § 404.1520 (2007).  The claimant bears the burden of proof on the first four steps of the inquiry, while the Commissioner bears it on the fifth.  Crowley v. Apfel, 197 F.3d 194, 198 (5th Cir. 1999); Brown, 192 F.3d at 498.  The Commissioner can satisfy this burden either by reliance on the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence.  Fraga v. Bowen, 810 F.2d 1296, 1304 (5th Cir. 1987).  If the Commissioner satisfies his step-five burden of proof, the burden shifts back to the claimant to prove she cannot perform the work suggested.  Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991). The analysis stops at any point in the process upon a conclusive finding that the claimant is disabled or not disabled.  Greenspan, 38 F.3d at 236.

### III.  Analysis

#### A.   The ALJ's Decision

In his formal decision, the ALJ followed the five-step process outlined in the regulations, finding at the first step that Plaintiff had not engaged in substantial gainful activity since January 10, 2007.[127]  At step two, the ALJ found that Plaintiff suffered from the following severe impairments: hypertension, hepatitis C, coronary artery disease, renal disease, congestive aortic dissection status post-graft replacement in 2006, ulcer,

---

[127]    Tr. 11.

cardiomegaly,[128] and cocaine abuse.[129]  However, at step three, the ALJ found that none of Plaintiff's impairments, or combination of impairments, were sufficiently severe to meet or equal the impairments found in the Listings.[130]

Next, the ALJ considered Plaintiff's medical record and testimony, as well as the testimony of the VE.[131]  The ALJ determined, at step four, that Plaintiff had an RFC that included the following abilities: occasionally lifting or carrying ten pounds; standing or walking two hours in an eight-hour work day; sitting six hours in an eight-hour workday; occasionally climbing stairs, stooping, and crouching.[132]  The ALJ found, based on the VE's testimony, that these abilities fell within the sedentary exertional level.[133]  The ALJ concluded that Plaintiff did not have the RFC to perform her past relevant work.[134]

However, at step five, the ALJ found that Plaintiff had the RFC to work in such occupations as, for example, receptionist,

---

[128]    Cardiomegaly is enlargement of the heart.  MERRIAM WEBSTER'S MEDICAL DICTIONARY (Springfield, Merriam Webster, Inc. 1995).

[129]    Tr. 12.

[130]    Tr. 12.

[131]    Tr. 12-16.

[132]    Tr. 12.

[133]    Tr. 15-16.

[134]    Tr. 15.

appointment clerk, and information clerk.[135]   Therefore, the ALJ determined that Plaintiff was not disabled under the Act.[136]

**B.    Summary of the Parties' Arguments**

Plaintiff requests judicial review of the ALJ's decision to deny her disability benefits.  In her motion for summary judgment, Plaintiff makes eight arguments: (1)(a) the ALJ erred in failing to obtain an updated medical opinion of a medical expert as to the medical equivalency of Plaintiff's combined physical and mental impairments;[137] (1)(b) the ALJ erred in failing to consult a medical expert regarding Plaintiff's RFC in light of Plaintiff's combined impairments;[138] (2) the ALJ's failure to obtain an updated medical expert opinion resulted in a failure to properly develop the case;[139] (3) the ALJ erred in concluding that Plaintiff's allegations of non-exertional symptoms were exaggerated based on her daily living activities;[140] (4) the ALJ failed to consider, discuss, or make provision in his RFC assessment with regard to the side effects of Plaintiff's medications on her ability to work;[141] (5) the ALJ erred

---

[135]    Tr. 16.

[136]    Tr. 16.

[137]    Docket Entry No. 14, Pl.'s Mot. for Summ. J., p. 7.

[138]    Id.

[139]    Id. at 9.

[140]    Id.

[141]    Id. at 10.

22

in discounting Plaintiff's credibility on the basis that Plaintiff was noncompliant with prescribed medications;[142] (6) the ALJ erred in failing to conduct a meaningful evaluation of Plaintiff's credibility;[143] (7) the ALJ failed to consider the non-exertional impairments of fatigue, chronic shortness of breath, and swelling that required Plaintiff to elevate her feet, and their effects on Plaintiff's ability to perform work on a sustained basis at the RFC assessed by the ALJ;[144] and (8) the ALJ erred in finding Plaintiff's major depression not to be "severe."[145]

Defendant, on the other hand, contends that the ALJ's decision is supported by substantial evidence of record and that the ALJ employed proper legal standards in reviewing the evidence.[146] Defendant therefore maintains that the ALJ's decision should be affirmed.

## C.   Step Two: Severity of Depression

Plaintiff's argues that the ALJ erred in finding Plaintiff's major depression not to be "severe."[147]  In support of this argument, Plaintiff asserts that the ALJ must consider the combined effects

---

[142]    Id. at 11.

[143]    Id. at 12.

[144]    Id. at 14.

[145]    Id. at 16.

[146]    Docket Entry No. 13, Def.'s Cross Mot. for Summ. J., Attach. 3, Def.'s Memo in Support.

[147]    Docket Entry No. 14, Pl.'s Mot. for Summ. J., p. 16.

of all impairments.[148]   20 C.F.R. §§ 404.1523, 416.923 (1991).
Additionally, Plaintiff argues that the ALJ "cannot pick and choose
only the evidence which supports his position." Loza v. Apfel, 219
F.3d 378, 391 (5th Cir. 2000).[149]

The ALJ did not make any finding about Plaintiff's depression.
Plaintiff did not include depression as a condition limiting her
ability to work on any of her disability report paperwork.[150]  There
was no finding of depression as a result of Plaintiff's State agency
examination from November 2007.[151]  Plaintiff's depression was not
mentioned by any of the parties at the ALJ hearing.[152]

Plaintiff was given a discharge diagnosis of depression in July
2007 and of severe depression in July 2008.[153]  This diagnosis does
not appear in the records from Plaintiff's four other trips to the
emergency room, including two subsequent visits.[154]  There is no
record that Plaintiff was prescribed any anti-depressant medication
as a result of these two diagnoses, nor do the discharge notes
include any instructions for these diagnoses, such as a follow up

---

[148]    Id.

[149]    Id.

[150]    Tr. 155-178.

[151]    Tr. 307-309.

[152]    Tr. 22-47.

[153]    Tr. 208, 476.

[154]    Tr. 280-304, 329-330, 608-709.

visit with a clinic, psychologist, or psychiatrist.[155]

The court does not attempt to assess whether Plaintiff is clinically depressed. However, Plaintiff did not assert this as an impairment limiting her ability to work until her motion for summary judgment.[156]   The burden is on the claimant to prove that she is disabled.  Crowley, 197 F.3d 194, 198.  As Plaintiff did not list depression among her impairments at the time of the ALJ hearing, and there is scant evidence in the file with regard to this impairment, the court overrules Plaintiff's argument that the ALJ erred in finding Plaintiff's major depression not to be severe.

**D.  Medical Expert**

The court next considers Plaintiff's first and second arguments.  Plaintiff contends that the ALJ failed to properly develop the case in two ways: 1) at step three, the ALJ did not obtain an updated medical opinion with regard to the medical equivalency of Plaintiff's combined impairments; and 2) at step four, the ALJ did not consult a medical expert with regard to Plaintiff's RFC.[157]

**1.    Step Three: Updated Medical Opinion Regarding Equivalency**

Plaintiff argues that the ALJ erred in failing to obtain an updated medical opinion of a medical expert as to the medical

---

[155]    Tr. 702.

[156]    Docket Entry No. 14, Pl.'s Mot. for Summ. J., p. 16.

[157]    Id. at 7-9.

25

equivalency of Plaintiff's combined physical and mental impairments.

Social Security Ruling ("SSR") 96-5p clarifies that equivalence is a decision based on "medical evidence only" and does not include vocational factors.  96-5p, 1996 WL 374183, at *4 (S.S.A. July 2, 1996) (citing to 20 C.F.R. §§ 404.1526, 416.926 (2006)).  The ruling further explains that the requirements of listed impairments are usually objective and whether an individual's impairment meets these requirements is simply a matter of documentation.  96-5p, 1996 WL 374183, at *3.

The claimant has the burden to prove that her impairment or combination of impairments meets or equals a Listing.  Selders, 914 F.2d at 619.  If a claimant does not exhibit all of the requirements of a listed impairment, then medical equivalence may be established by showing that her unlisted impairment or combination of impairments is equivalent to a listed impairment.  Sullivan v. Zebley, 493 U.S. 521, 531 (1990).  To do so, the claimant must present medical findings that are at least equal in duration and severity to the listed findings.  See id. (citing 20 C.F.R. § 416.926(a)).  A court will find that substantial evidence supports the ALJ's finding at step three if Plaintiff fails to demonstrate the specified medical criteria.  Selders, 914 F.2d at 619-20.

The record shows that the ALJ reviewed the evidence that Plaintiff provided and found:

> No treating, examining, or non-examining health care
> provider has identified any ailment of sufficient

severity to satisfy a listing, including sections 4.04, 4.02, 5.05, 6.02.[158]

Plaintiff contends that this finding was reached without the interpretation of a medical expert of the evidence that was submitted after December 12, 2007.[159]  In other words, Plaintiff asserts that the only medical assessment in this case predated the submission of over four hundred pages of medical records.  Plaintiff argues that in a case where additional medical evidence is received, an ALJ must get an updated medical opinion if the evidence may change the State agency medical findings.[160]  Plaintiff cites to SSR 96-6p, 1996 WL 374180 (S.S. A. July 2, 1996), and Brister v. Apfel, 993 F. Supp. 574, 578 (S.D. Tex. 1998), in support of this argument.

SSR 96-6p and the court in Brister leave this decision to the discretion of the ALJ:

> It is clear that when additional medical evidence is received that *in the opinion of the ALJ* may change the State agency medical or psychological consultant's findings, an updated medical opinion regarding disability is required.

See SSR 96-6p, 1996 WL 374180, at *3; see also Brister, 993 F. Supp. at 578 n.2 (emphasis added).  Therefore, if the ALJ believes that any medical evidence received after a medical opinion was obtained might change the State agency's findings, then the ALJ must obtain an updated opinion.  If the ALJ does not think that an updated

---

[158]    Tr. 14.

[159]    Docket Entry No. 14, Pl.'s Mot. for Summ. J., p. 7.

[160]    Tr. 7.

27

opinion would change the State agency's findings, then the ALJ is not required to obtain an updated opinion.

SSR 96-6p states that "the ALJ is responsible for deciding the ultimate legal question whether a listing is met or equaled." SSR 96-6p, 1996 WL 374180, at *3. The ALJ is not required to get an updated medical opinion on the issue of equivalency. See e.g., Thomas v. Astrue, No. 6:07-CV-053-C ECF, 2009 WL 2777867, at *4-5 (N.D. Tex. Aug. 31, 2009)(unpublished) (finding that the ALJ did not err in failing to obtain an updated medical opinion on the question of medical equivalence as to the plaintiff's visual impairments even when such issue did not arise until after the State agency medical consultant had reviewed the plaintiff's case and there was no physician or medical expert opinion in the record relating to such issue).

It is clear from his opinion that the ALJ considered all of the medical evidence in Plaintiff's voluminous record. This included: hospital records from 2006;[161] notes from the State agency requested medical exam, performed on November 14, 2007;[162] two case assessments completed by State agency doctors, the first dated December 12, 2007,[163] the second dated June 30, 2008;[164] two visits to the

---

[161]   See Tr. 13, 587-604.

[162]   See Tr. 14, 307-309.

[163]   Tr. 317-324.

[164]   Tr. 343.

emergency room in 2007;[165] and three visits to the emergency room in 2008.[166]  The ALJ concluded that "no treating physician has indicated that [Plaintiff] is disabled."[167]

To be entitled to relief, a plaintiff must establish not only that the ALJ erred, but also that the ALJ's error casts into doubt the existence of substantial evidence to support the ALJ's decision. Morris v. Bowen, 864 F.2d 333, 335 (5th Cir. 1988).  Plaintiff does not refer to any specific impairment in the Listing that is applicable to her circumstances, nor has she presented any evidence or argument suggesting that any of her impairments or combination of impairments meet or equal a listed impairment.

Therefore, the court overrules Plaintiff's argument that the ALJ was required to obtain an updated medical opinion.

### 2.   Step Four: Medical Expert Regarding Plaintiff's RFC

Plaintiff argues that the ALJ erred in failing to consult a medical expert regarding Plaintiff's RFC in light of Plaintiff's combined physical and mental impairments.[168]

The RFC assessment is an administrative finding that is reserved to the Commissioner.  SSR 96-5p, 1996 WL 374183, at *5. An ALJ may ask for the opinion of a medical expert at a hearing, but

---

[165]   See Tr. 13, 208-304.

[166]   See Tr. 14, 476-483, 608-709.

[167]   Tr. 14.

[168]   Docket Entry No. 14, Pl.'s Mot. for Summ. J., p. 7.

it is not mandatory.  <u>Madis v. Massanari</u>, 277 F.3d 1372 (5th Cir. 2001).  <u>See also</u> 20 C.F.R. § 404. 1527(f)(2)(iii) ("ALJs *may* also ask for and consider opinions from medical evidence.")(emphasis added).

As the ALJ is not required to obtain an opinion from a medical expert, the court cannot find that failure to do so constituted a failure to properly develop the case.  Thus, the court overrules Plaintiff's argument to the contrary.

**E.  Plaintiff's RFC**

Plaintiff contests the ALJ's finding that Plaintiff had the RFC to work at a sedentary exertional level.  In her fourth argument, Plaintiff asserts that the ALJ failed even to discuss, much less consider, or make provision in the RFC assessment with regard to the side effects of Plaintiff's multiple medications on her ability to work.[169]  Additionally, Plaintiff's seventh argument is that the ALJ erred in failing to consider Plaintiff's non-exertional impairments of fatigue, chronic shortness of breath, and swelling that required Plaintiff to elevate her feet, and their effects on Plaintiff's ability to perform work on a sustained basis at the RFC assessed by the ALJ.[170]

**1.  Side Effects of Plaintiff's Medications**

The court turns first to Plaintiff's argument that the ALJ

---

[169]    <u>Id.</u> at 10.

[170]    <u>Id.</u> at 14.

failed to make provision in his RFC assessment with regard to the side effects of Plaintiff's multiple medications on her ability to work, as required by SSR 96-7p, 1996 WL 374186 (S.S.A. July 2, 1996), and SSR 96-8, 1996 WL 374184 (S.S.A. July 2, 1996).[171]

The ALJ must take into account the effects of medication on a claimant's ability to perform work tasks.  See Loza v. Apfel, 291 F.3d 378, 396-7 (5th Cir. 2000).  Here, the ALJ specifically noted in his opinion, within his discussion of Plaintiff's RFC and all relevant symptoms and impairments, that Plaintiff testified that her medications make her dizzy and sleepy.[172]  However, the ALJ did not find Plaintiff's testimony on the severity of her symptoms to be fully credible.[173]

Nevertheless, the ALJ made provision in his RFC assessment with regard to some side effects of Plaintiff's medications in determining that the Plaintiff did not have the RFC to perform any of her past work or even work at a light exertional level:

> If the claimant had the RFC to perform the full range of light work, a finding of 'not disabled' would be directed by Medical-Vocational Rule 202.321 and Rule 202.14. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations.[174]

The "additional limitations" that the ALJ refers to in his opinion

---

[171]   Id. at 10.

[172]   Tr. 13.

[173]   Tr. 14.

[174]   Tr. 14.

includes the side effects of Plaintiff's medications.  This is clear
in the ALJ hearing transcript.  At the hearing the ALJ created a
hypothetical that took into account Plaintiff's physical limitations
describing a person who:

> Could stand and walk about two hours in an eight hour day
> with normal breaks, or sit for six, lifting or carrying
> 10 pounds occasionally.  The following are occasionally:
> stairs, stooping, crouching.  The following are never:
> ropes, ladders, and scaffolding, kneeling, crawling and
> no dangerous machinery.[175]

He then asked Plaintiff: "Do your medicines cause you any side
effects?"  She responded: "Yes, they [sic], drowsiness, dizziness,
sleepy, sometimes disoriented.  Can't really stand up too fast
because I get lightheaded."  The ALJ asked the VE if such an
individual could perform the Plaintiff's past work.  The VE said,
"No."  However, the VE listed three jobs at a sedentary exertional
level that such an individual could perform.  The ALJ ultimately
adopted the VE's opinion and determined:

> Based on the testimony of the vocational expert, the
> undersigned concludes that, considering the claimant's
> age, education, work experience, and RFC, the claimant is
> capable of making a successful adjustment to other work
> that exists in significant numbers in the national
> economy.[176]

The court finds, therefore, that the ALJ took the side effects
of Plaintiff's medications into account and considered some of these
side effects to be among the additional limitations that prevented

---

[175]    Tr. 42-43.

[176]    Tr. 16.

Plaintiff from performing past work and that limited her to a job with a sedentary exertional level.

Accordingly, the court overrules Plaintiff's arguments on this point.

### 2. Plaintiff's Non-Exertional Impairments

Plaintiff also asserts that the ALJ erred in failing to consider her non-exertional impairments of fatigue, chronic shortness of breath, and swelling that required Plaintiff to elevate her feet, and their effects on Plaintiff's ability to perform work on a sustained basis at the RFC assessed by the ALJ.[177]

The ALJ clearly weighed Plaintiff's nonexertional impairments in his discussion of Plaintiff's RFC and Plaintiff's symptoms that affect her RFC.  The ALJ noted:

> [Claimant] also notes that most of an average day she has to rest because she is so fatigue [sic] . . . . Claimant's complaints were chest pain, liver problems, and hypertension . . . . Claimant was hospitalized . . . with complaints of left chest heaviness along with shortness of breath.[178]

The ALJ considered the above nonexertional impairments and found that these and other impairments could reasonably be expected to cause Plaintiff's alleged symptoms.[179]  However, the ALJ did not find Plaintiff's testimony on the severity of her symptoms to be

---

[177]    Docket Entry No. 14, Pl.'s Mot. for Summ. J., p. 14.

[178]    Tr. 13-14.

[179]    Tr. 14.

fully credible.[180]  Therefore, the court finds that the ALJ credited Plaintiff's nonexertional symptoms and their effect on her ability to work, but not at the level of severity claimed by Plaintiff.

Accordingly, the court overrules Plaintiff's argument with regard to this point.

## F.  Plaintiff's Credibility

Plaintiff's third, fifth, and sixth arguments challenge the ALJ's credibility determination.  Plaintiff contends that the ALJ erred in failing to conduct a meaningful evaluation of Plaintiff's credibility.[181]  Plaintiff specifically debates two of the ALJ's credibility determinations.  First, Plaintiff asserts that the ALJ erred in concluding that Plaintiff's allegations of non-exertional symptoms are exaggerated based on her daily living activities.[182]  In addition, Plaintiff contends that the ALJ erred in discounting Plaintiff's credibility on the basis of Plaintiff's noncompliance with prescribed medications.[183]

In determining the claimant's RFC, the ALJ must follow a two-step process.  SSR 96-7p, 1996 WL 374196, at *2 (S.S.A. July 2, 1996).  At step one, the ALJ has to determine whether there is an underlying medically determinable physical or mental impairment.

---

[180]    Tr. 14.

[181]    Docket Entry No. 14, Pl.'s Mot. for Summ. J., p. 12.

[182]    Id. at 14.

[183]    Id. at 11.

Id.   At step two, the ALJ has to evaluate the intensity, persistence, and limiting effects of the Plaintiff's symptoms to determine the extent to which they limit the claimant's ability to do basic work activities.   Id.   Whenever symptoms are not substantiated by objective medical evidence, the regulations require the ALJ to make a finding on credibility based on a consideration of the entire case record.   Id.   (citing to 20 C.F.R. §§ 404.1529 (c)(4), 416.929 (c)(4)(2010)).   SSR 96-7p further explains:

> The determination decision must contain specific reasons for the finding on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight.

Id.

The ALJ found that the objective medical evidence did not support Plaintiff's complaints and that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her alleged symptoms were "not credible to the extent that they [were] inconsistent with the . . . RFC assessment."[184]   The ALJ enumerated five issues of credibility, based on the record and Plaintiff's testimony:

> No treating physician has indicated that she is disabled. Her work history shows that she did not work consistently, even prior to her alleged onset date.   She continues the cocaine abuse.   Her activities of daily living are inconsistent with the alleged severity of impairments or pain.   In addition, she is noncompliant

---

[184]   Tr. 14.

with medication and treatment.[185]

## 1. Treating Physicians

The court turns to the ALJ's first finding that no treating physician indicated that Plaintiff was disabled.  The ALJ considered opinion evidence from Plaintiff's State agency examination, two State agency assessments, and Plaintiff's hospital records.

Dr. Sahi examined Plaintiff in November 2007 and noted that she felt Plaintiff would have difficulty sitting and standing for moderate periods of time, walking short distances, and light lifting.[186]   The ALJ explained in his opinion that he weighed Dr. Sahi's statements as statements from a non-examining physician, and so they were given little weight. The ALJ's treatment of Dr. Sahi's opinion is proper under the regulations.  Although the ALJ cannot ignore such opinions, he is not bound by them and must explain the weight given to these opinions in his decision.  SSR 96-6p, 1996 WL 374180, at *2.

Both State agency physicians wrote in their assessments, dated December 12, 2007, and June 3, 2008, that the severity of the limits alleged by Plaintiff were not supported by evidence in the file.[187]  Additionally, Dr. Spoor found that Plaintiff had the RFC to occasionally carry twenty pounds, frequently carry ten pounds, stand

---

[185]   Tr. 14.

[186]   Tr. 309.

[187]   Tr. 322, 343.

or walk about six hours in an eight-hour work day, and sit about six hours in an eight-hour work day.[188]   In her assessment form, Dr. Rowlands wrote: "[Claimant] reports having had two surgeries since initial evaluation.   She is not responding to requests for information.   Insufficient evidence denial."[189]   The ALJ's opinion was consistent with both assessments.

Plaintiff's last hospital stay, in September 2008, included a detailed physical assessment.[190]   Ms. Ingram from MDMC saw Plaintiff on September 23, 2008, and found that Plaintiff's respiratory effort was non-labored and that Plaintiff was able to walk with no limitations.[191]   The ALJ noted that Plaintiff's discharge diagnosis from MDMC was chest pain.[192]

The court finds the medical record supports the ALJ's determination that no treating physician has indicated that Plaintiff is disabled.   Accordingly, the court finds that this undermines Plaintiff's credibility and overrules Plaintiff's argument to the contrary.

### 2. Plaintiff's Work History

Next, the ALJ found that Plaintiff's work history was

---

[188]   Tr. 318.

[189]   Tr. 343.

[190]   See Tr. 696-709.

[191]   Tr. 697, 700.

[192]   Tr. 14.

inconsistent prior to the alleged onset date.

Plaintiff stated in her disability report that she was unable to work due to her condition, beginning on January 10, 2007.[193] However, she also wrote that she stopped working almost one year earlier, in March 2006, because she did not have a car.[194] Plaintiff's work history report appears to show that she did not work in 1994, or from January 2003 to June 2004.[195] Her earnings statement shows that no FICA tax was collected in 1992 or 2003, while approximately twenty dollars was collected from Plaintiff in 2004, and approximately one hundred and thirty three dollars was collected in 2006.[196]

The court notes that out of the five years preceding Plaintiff's application for SSI and DIB, Plaintiff worked approximately two years.  Therefore, there is evidence to support the ALJ's finding that Plaintiff's work history was inconsistent prior to the alleged onset date.  The court finds that this undermines Plaintiff's credibility and overrules Plaintiff's argument to the contrary.

### 3.   Drug Use

The ALJ also found that Plaintiff continued to abuse cocaine.

---

[193]   Tr. 156.

[194]   Tr. 156.

[195]   Tr. 179.

[196]   Tr. 130.

As noted in the hearing testimony above, the record is somewhat inconsistent with regard to Plaintiff's history of cocaine use. Although Plaintiff testified that her sobriety date was August 18, 2007, this date is contradicted in two places in the record.[197]  The hospital records from Plaintiff's visit to LBJ in July 2008 indicate that Plaintiff used cocaine one month before.[198]  Additionally, the hospital records from Plaintiff's visit to LBJ in September 2008 state that Plaintiff last used cocaine six months before, "when she joined rehab."[199]

This court cannot reweigh the evidence and does not attempt to determine if Plaintiff continued to use cocaine after her stated sobriety date.  However, credibility determinations are generally entitled to great deference.  See Newton v. Apfel, 209 F.3d 448, 459 (5th Cir. 2000).  As Plaintiff's testimony at the ALJ hearing was not consistent with the record, the court finds that this undermines Plaintiff's credibility and overrules Plaintiff's argument to the contrary.

**4.  Plaintiff's Daily Living Activities**

The ALJ also found that Plaintiff's "activities of daily living are inconsistent with the alleged severity of impairments or

---

[197]    Tr. 30.

[198]    Tr. 479.

[199]    Tr. 608-609.

pain."[200]   Plaintiff   contends   that   the   ALJ   erred   in   reaching   this
conclusion.[201]

> The ALJ noted:
>
> The   claimant's   activity   of   daily   living   questionnaire
> indicate [sic] that due to her physical problems, mainly
> shortness of breath, she has difficulty lifting, walking,
> standing, bending, kneeling, climbing, reaching, and even
> taking a bath.[202]

The ALJ noted further that Claimant testified that she cooks and
shops   for   groceries.[203]    She   also   testified   that   she   attended
Narcotics Anonymous and family support meetings for her substance
abuse.[204]   Plaintiff's   testimony   calls   into   question   the   limiting
effects of her alleged symptoms.   Even though the ALJ determined
that Plaintiff's symptoms were not severe enough to find her
disabled,   the  ALJ  did  not  altogether  disregard  her  impairments.
The ALJ determined that Plaintiff maintained the RFC to work only
at a sedentary exertional level.

Accordingly, the court finds that there is sufficient evidence
to   support   the   ALJ's   determination   and   overrules   Plaintiff's
argument.

---

[200]   Tr. 14.

[201]   Docket Entry No. 14, Pl.'s Mot. for Summ. J., p. 10.

[202]   Tr.  13.    Plaintiff  also  indicated  in  the  daily  activity
questionnaire that her physical problems did not limit the following activities:
sitting, using her hands, hearing, speaking, reading the newspaper, watching
television, or using the phone.  Tr. 188.

[203]   Tr. 13.

[204]   Tr. 13.

### 5.   Plaintiff's Noncompliance with Prescribed Medications

Finally, the ALJ found that Plaintiff was noncompliant with her prescribed medications.[205]  Plaintiff argues that the ALJ erred in discounting Plaintiff's credibility on this basis.[206]

At the hearing, the ALJ stated that there were at least three occurrences in the medical record where it was noted that Plaintiff was not compliant with her medication.[207]  The ALJ noted one occurrence in his opinion.[208]  When Plaintiff was admitted to LBJ in July 2008, for shortness of breath, Plaintiff stated that she had only been taking her medication once a week for the past month.[209]  The ALJ asked Plaintiff why she was not taking her medication regularly.[210]  Plaintiff explained that her Medicaid had expired and she could not afford to refill her medication.[211]  However, she further explained that each time she ran out of medication, she went to the hospital to get her medication refilled.[212]

20 C.F.R. §§ 404.1530 and 416.930 state:

(a) In order to get benefits, you must follow treatment

---

[205]    Tr. 14.

[206]    Docket Entry No. 14, Pl.'s Mot. for Summ. J., p. 11.

[207]    Tr. 38.

[208]    Tr. 13.

[209]    See Tr. 477.

[210]    Tr. 38.

[211]    Tr. 38.

[212]    Tr. 39.

> prescribed by your physician if this treatment can
> restore your ability to work.  (b) If you do not follow
> the prescribed treatment without a good reason, we will
> not find you disabled.

20 C.F.R. §§ 404.1530 (1994), 416.930 (1997).  These rules include

a list of reasons or situations which would exempt a claimant from

complying with prescribed treatment.  None of these reasons apply

to Plaintiff's circumstances, nor does she attempt to argue that she

falls within one of these exceptions.

Plaintiff asserts two alternative arguments.  First, she argues

that multiple cases establish that if a claimant cannot afford the

prescribed treatment, and can find no way to obtain it, "the

condition that is disabling in fact continues to be disabling in

law." Lovelace v. Bowen, 813 F.2d 55, 59 (5ᵗʰ Cir. 1987) (quoting

Taylor v. Bowen, 782 F.2d 1294, 1298 (5ᵗʰ Cir. 1986)).  Next, she

argues that the ALJ is obliged to make affirmative findings as to

whether compliance would restore Plaintiff's ability to work.

The court turns to Plaintiff's first argument, that Plaintiff

had no way to obtain her medication and so should be considered

disabled.  Plaintiff testified that she had previously obtained her

medication through at least two means: first, through Medicaid;

alternatively, by going to the hospital.[213]  Thus, it is clear that

Plaintiff was able to obtain her medication.  Therefore, the record

supports the ALJ's finding that Plaintiff was noncompliant with

prescribed medication, and the court overrules Plaintiff's first

---

[213]     Tr. 38-39.

argument on this point.

Second, Plaintiff argues that before discounting her credibility for medical noncompliance, the ALJ is required to make affirmative findings as to whether compliance would restore Plaintiff's ability to work.[214]  Plaintiff cites to <u>Frey v. Bowen</u>, 816 F.2d 508 (10th Cir. 1987), in support of this argument.  The issue in <u>Frey</u> was that the ALJ ignored the testimony of several doctors who testified that the claimant could not take his arthritis medications, which could have mitigated the limitations caused by the claimant's arthritis, because these medications would exacerbate the claimant's gastrointestinal problems.  <u>Id.</u> at 514.  Doctors further testified that the claimant in <u>Frey</u> was totally disabled. <u>Id.</u>

The present case is distinguishable.  The hospital records show that Plaintiff went to the hospital in July 2008, after failing to take her medications regularly.  She was given her prescribed blood pressure medications and was diuresed[215] for three days; "by the end of the third day, she did not have any more shortness of breath or chest pain.  The facial edema decreased and there was no lower extremity edema during discharge."[216]  Plaintiff was discharged and instructed to continue taking her medications regularly.

---

[214]    Docket Entry No. 14, Pl.'s Mot. for Summ. J., p. 12.

[215]    Diuresis is an increased excretion of urine.  MERRIAM WEBSTER'S MEDICAL DICTIONARY (Springfield, Merriam Webster, Inc. 1995).

[216]    Tr. 477.

Plaintiff does not present satisfactory arguments as to why she was noncompliant with her medication; therefore, the record supports the ALJ's finding that Plaintiff was noncompliant, and the court overrules Plaintiff's second argument.

The court finds that the ALJ's credibility determination is supported by substantial evidence.  Therefore, the court overrules Plaintiff's arguments to the contrary.

Accordingly, having exhausted all of Plaintiff's arguments, Plaintiff's motion for summary judgement is **DENIED.**

## G.   Defendant's Argument

Defendant asserts that the ALJ's decision should be affirmed because the ALJ properly determined Plaintiff was never under a disability.[217]

The issues presented are whether substantial record evidence and relevant legal standards support the Commissioner's finding that Plaintiff's impairments are not disabling.[218]  Brown, 192 F.3d at 496.  For the reasons stated above, the court finds Defendant satisfied his burden.  The ALJ's decision finding Plaintiff not disabled is supported by substantial record evidence.  The court also agrees with Defendant that the ALJ applied the proper legal standards in evaluating the evidence and in making his determination.  Therefore, Defendant's cross motion for summary

---

[217]    Docket Entry No. 13, Def.'s Cross Mot. for Summ. J., Attach. 3, Def.'s Memo in Support, p. 9-10.

[218]    Id. at 1.

judgment is **GRANTED**.

### IV.   Conclusion

Based on the foregoing, the court **DENIES** Plaintiff's Motion for Summary Judgment (Docket Entry No. 14) and **GRANTS** Defendant's Cross Motion for Summary Judgment (Docket Entry No. 13).

**SIGNED** in Houston, Texas, this 27th day of December, 2010.

Nancy K. Johnson
United States Magistrate Judge

45